IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| JOHN BUTLER,<br><br>       Plaintiff<br><br>v.<br><br>SERGEANT PIERSON, et al,<br><br>       Defendants | 1:22-cv-00091-SPB-RAL<br><br>SUSAN PARADISE BAXTER<br>United States District Judge<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>Amended Report and Recommendation on Defendants' Motion for Summary Judgment<br><br>ECF No. 59 |

MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 59] be granted.

II. Report

   A. Introduction

Plaintiff John Butler, an inmate formerly incarcerated at the State Correctional Institution at Albion (SCI-Albion), initiated this civil rights action pursuant to 42 U.S.C. § 1983 on March 14, 2022.[1]  ECF No. 1. In his Complaint, Butler alleges that prison officials violated his First and Eighth Amendment rights by engaging in unlawful retaliation and subjecting him to cruel and unusual conditions of confinement. *See* ECF No. 10. As Defendants, Butler has named

---

[1] Butler has since been transferred to SCI-Houtzdale.

several officials and employees at SCI-Albion including Sergeant Heider, Sergeant Pierson, Sergeant Wade, Lieutenant Johnson, Officer Bly, Ryan Szelewski, and Zachary Moslak. *Id.*

Presently pending is Defendants' Motion for Summary Judgment. ECF No. 59. Defendants' motion is supported by a Concise Statement of Material Facts, a supporting Brief, and Appendix of Exhibits. ECF Nos. 60-62. Butler has filed a Responsive Concise Statement of Material Facts and a Brief in Opposition to Defendants' motion. ECF Nos. 75-77. The motion is ripe for disposition.[2]

B.  Factual Background

Before summarizing the factual record, the Court notes that the Concise Statement of Material Facts offered in support of Defendants' motion contains only two facts: that Defendant Pierson "was ordered by Mr. Suesser to move Plaintiff from one cell to another on August 4, 2020," and that Butler appealed a particular misconduct to final review. ECF No. 61 ¶¶ 1-2. In their supporting brief, Defendants explain that their primary contention is that "they are entitled to judgment as a matter of law based primarily on the allegations in the Complaint" and, therefore, their statement of facts "is brief and does not contain a full recitation of every relevant fact at issue in this case." ECF No. 60 at p. 1 n. 1. Butler responded by filing a Responsive Concise Statement that contained numerous additional material facts that he believed were "at issue [and were] necessary for the Court to determine the motion for summary judgment." ECF No. 75; LCvR 56.C.1.c. Because Defendants failed to respond to the additional material facts set forth in Butler's responsive statement, each of these facts must be deemed admitted. *See* LCvR 56.E. Accordingly, the following factual recitation is derived primarily from Butler's sworn

---

[2] This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

declaration and the well-supported factual allegations set forth in his Responsive Concise Statement. *See* ECF Nos. 75-76.

According to Butler, on January 31, 2020, he "assisted fellow inmate Taylor Coleman with filing an Inmate Grievance against Defendant Heider." ECF No. 10 ¶ 38. Heider later learned that Butler had assisted Coleman with the grievance. ECF No. 76 ¶ 5. Several months later, on July 28, 2020, Butler pressed the call button in his cell and asked if he could take a shower. *Id.* ¶ 1. Heider responded over the intercom by stating: "No! And whenever I am working you are not coming out for anything! Showers, phone calls, kiosk, work, nothing!" *Id.* ¶ 2. Butler perceived Heider's response as "in retaliation to the plaintiff helping a fellow inmate, Taylor Coleman, file a grievance against Defendant Heider." *Id.* ¶ 3.

Shortly thereafter, Butler notified Unit Manager Santos, a non-Defendant, "of the fact that Defendant Heider denied him a shower, work, kiosk, and phone call." *Id.* ¶ 6. After speaking with Heider, Santos informed Butler that he could come out for showers, phone calls, and kiosk, but not to come out for work when Heider was there. *Id.* ¶ 8. Butler agreed to this plan. *Id.* Despite Santos' assurance, Heider denied Butler additional opportunities to shower or use the phone or kiosk on several occasions between July 29, 2020, and August 1, 2020. *Id.* ¶ 9. When Butler objected, Heider allegedly stated: "I don't give a fuck who you tell! You got the right one now mother fucker! I'm not hiding in the bubble, I'll come out there and punch you in the mouth in the middle of the dayroom!" *Id.* ¶ 10. Butler perceived this threat to be "in response to the Plaintiff reporting [Heider] to Mr. Santos three days prior." *Id.* ¶ 11.

On August 3, 2020, another defendant, Sergeant Pierson, denied Butler a shower. *Id.* ¶ 12. The following day, Pierson told Butler to pack up his property to move to an adjacent cell. *Id.* ¶ 13. When Butler questioned the move, Pierson told him that he had been given an "H-

3

code," a designation normally reserved for inmates who had previously attempted to escape. *Id.* ¶ 15; ECF No. 10 ¶ 12. Pierson then approached Butler with clenched fists and verbally threatened him. ECF No. 76 ¶¶ 16-18. Pierson later filed a misconduct report against Butler for refusing the order to move cells. ECF No. 77-4 at 2. Butler contends that Pierson took these steps to "continue[] Defendant Heider's retaliatory animus." ECF No. 76 ¶ 12.

On August 6, 2020, Butler attended a hearing on the misconduct issued by Pierson. *Id.* ¶ 23. Although Butler insists that he entered a plea of "not guilty," Defendant Szelewski recorded his plea as "guilty." *Id.* ¶ 24. Butler maintains that Szelewski intentionally misrepresented his plea to "cover up" Pierson's "falsified" misconduct report. *Id.* ¶ 29. Butler was ultimately sentenced to fifteen days in the Restricted Housing Unit (RHU) for refusing to obey Pierson's order. ECF No. 77-4 at 4. When Butler appealed, Defendant Moslak, the Chief Hearing Officer for the DOC, denied his appeal as part of a continued effort to "cover up" for Pierson and Szelewski's wrongdoing. ECF No. 76 ¶ 15.

At some point during his confinement in the RHU, Defendants Wade and Bly conducted an inventory of Butler's possessions. *Id.* ¶¶ 32-33. Butler later noticed that his gray New Balance sneakers, a pair of brown sweat shorts, and some legal documents and other personal items were missing. *Id.* ¶ 32. Despite filing a grievance, Butler avers that he never got his property back.[3] *Id.* ¶ 34. Bly later told him that if he ever came back to the RHU he would

---

[3] Although Butler does not mention the Fourteenth Amendment anywhere in his filings, there is a remote chance that he may have intended to assert a due process claim based on his missing property. To the extent that this is the case, the United States Supreme Court has held that "a claim cannot be stated under § 1983 for the deprivation of personal property, whether negligent or intentional, if a sufficient post-deprivation remedy for the loss exists." *Wongus v. Correctional Emergency Response Team*, 389 F.Supp.3d 294, 301 (E.D. Pa. July 19, 2019) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). The DOC's grievance procedure – which Butler utilized – has been held to satisfy this standard. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process).

"split [his] fucking head open!" *Id.* ¶ 43. Butler avers that these events collectively give rise to an inference "from which retaliation may be plausibly inferred." ECF No. 77 at 27.

    C. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to

interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

D. Analysis

1. Retaliation

To support a prima facie claim of retaliation in violation of the First Amendment, a plaintiff must produce evidence upon which a jury could reasonably find that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

a. Retaliation claims based on Coleman's grievance

Butler primarily alleges that Defendants engaged in a campaign of retaliation and harassment because Butler helped another inmate file a grievance against Heider. The alleged retaliation took the form of, among other things: a temporary deprivation of shower, kiosk, phone, and work privileges; a false misconduct; grievance denials; verbal threats; and a transfer to the RHU. Butler's claim fails for several reasons.

First, to the extent that Butler's claims are based on his activities as a "jailhouse lawyer," such activities do not amount to protected conduct.[4] Courts in the Third Circuit have consistently held that "[i]nmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates." *Massey v. Holman*, 2019 WL 3997845, at *4 (W.D. Pa. July 23, 2019) (quoting *Horan v. Collins*, 2016 WL 5030468, at *9 (M.D. Pa. Aug. 8, 2016)). *See also Cooper v. Pennsylvania Dept. of Corr.*, 2016 WL 1271327, at *4-5 (M.D. Pa. Mar. 31, 2016) (collecting cases for the same proposition).[5] In the absence of a protected First Amendment right, Butler cannot establish that he engaged in constitutionally protected conduct, a mandatory element of his retaliation claim. *Massey*, 2019 WL 3997845, at *4. *See also Miller v. Lawler*, 2012 WL 629280, at *15-16 (M.D. Pa. Feb. 3, 2012) (holding that, because inmates have no constitutional right to offer legal assistance to other inmates, such activity does not amount to "constitutionally protected conduct") (citing *Walker v. Campbell*, 2011 WL 6153104,

---

[4] Throughout his filings, he repeatedly emphasizes that Defendants' retaliatory acts took place primarily in response to the assistance that he provided to inmate Coleman while filing a grievance against Heider. ECF No. 32 ¶ 9, 38-39, 42, 52, 56, 73.

[5] In *Wisniewski v. Fisher*, the Court of Appeals for the Third Circuit held that prisoner-to-prisoner legal assistance "could fall within the limited First Amendment rights that prisoners retain" if the assistance took place "both pursuant to [the plaintiff's] job duties [at the prison] and in accordance with prison regulations." 857 F.3d 152, 156-57 (3d Cir. 2017) (holding that a prisoner employed as an Inmate Legal Reference Aide at the prison law library "who was responsible for assisting other inmates with the filing of legal documents and grievances" had engaged in constitutionally protected conduct pursuant to his job duties). Butler has not adduced any evidence to suggest that *Wisniewski* applies here.

at *5 (W.D. Pa. Oct. 31, 2011)); *Hodges v. Mankey*, 2014 WL 7338760, at *7 (W.D. Pa. Dec. 22, 2014) (assisting other inmate in filing grievances "is not protected activity giving rise to a First Amendment claim, and therefore could not form the basis of a Section 1983 claim.").

Next, even if Butler's legal assistance amounted to constitutionally protected activity, he has failed to establish a causal link between that activity and the alleged retaliation. Coleman's grievance was filed in January 2020, almost six months prior to the first alleged act of retaliation. That six-month lapse of time is far too great to support an inference of retaliatory motive. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that a span of six months between protected activity and adverse action is not unduly suggestive and does not sufficiently establish any causal link); *Fischer v. Transue*, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (temporal proximity of three weeks insufficient to establish causation); *Mar v. City of McKeesport*, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (three months); *Killen v. N.W. Human Servs., Inc.*, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (seventeen days).

Finally, Butler has failed to adduce any other evidence from which a jury might infer a causal link between the grievance filed against Heider and the allegedly retaliatory acts of the other five Defendants: Wade, Johnson, Bly, Szelewski, Moslak, and Pierson. Courts in the Third Circuit have consistently rejected retaliation claims against one defendant based on protected activity directed at other individuals for lack of retaliatory motive. *Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 Fed. Appx. 126 (3d Cir. 2014). As noted in several decisions, "there is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." *Williams v. Nyberg*, 2023 WL 4628378, at *9 (W.D. Pa. May 10, 2023) (quoting *Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009)). *See also Royster v. Beard*, 308 Fed. Appx. 576, 579 (3d Cir. 2009)

(affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity); *Horan v. Collins*, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016) (drawing no inference of causation where plaintiff's protected activity was not directed at any defendant). Butler's conclusory allegation that Wade, Johnson, Bly, Szelewski, Moslak and Pierson joined Heider in a "campaign of harassment" in response to Coleman's grievance is insufficient to create a triable issue of material fact as to this issue.

In short, the assistance that Butler offered to Coleman did not amount to constitutionally protected activity and, even if it did, he has failed to adduce evidence connecting Coleman's grievance to the alleged retaliation inflicted upon him months later by different individuals. Judgment should be entered in Defendants' favor as to any retaliation claims stemming from Coleman's grievance.

      b. Retaliation claim based on Butler's verbal complaint to Santos

In addition to the claims based on Coleman's grievance, Butler presents an independent claim that Heider and Pierson engaged in further retaliation in response to his verbal complaint to Santos about Heider. After Heider denied him a shower on July 28, 2020, Butler avers that he "notified Unit Manager Santos of the fact that Defendant Heider denied him a shower, work, kiosk, and phone call." ECF No. 76 ¶ 4. Santos conveyed Butler's complaints to Heider who responded by denying Butler those same privileges on four additional days between July 29 and August 1, 2020. *Id.* ¶ 9. On the latter occasion, Heider explicitly referenced Butler's report to Santos, stating: "I don't give a fuck who you tell!" *Id.* ¶ 10. Heider also verbally threatened Butler. *Id.*

The following day, Sergeant Pierson told Butler to pack up his property to move to an

9

adjacent cell. *Id.* ¶ 13. When Butler questioned the move, Pierson approached Butler with clenched fists and verbally threatened him. ECF No. 76 ¶¶ 16-18. Pierson later filed a misconduct report against Butler for refusing the order to move cells. ECF No. 77-4 at 2.

Unlike the retaliation claims based on Coleman's grievance, there is no question that Butler's verbal complaint to Santos amounted to protected activity. Butler has failed, however, to establish that Heider or Pierson subjected him to a sufficiently adverse action because of his complaint. It is well-settled that verbal harassment and threats do not rise above the "de minimis" level necessary to establish an adverse action. *See Dunbar v. Barone*, 487 Fed. Appx. 721, 723 (3d Cir. 2012) (noting that "verbal threats . . . are not sufficiently adverse to support a retaliation claim"); *Burgos v. Canino*, 358 Fed. Appx. 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation."). Courts have similarly held that "isolated or sporadic denial[s] of privileges" such as phone, shower, work, and recreational yard access do not amount to adverse actions for purposes of a retaliation claim. *Ortiz v. Cicchitello*, 2023 WL 3044603, at *3 (M.D. Pa. Apr. 21, 2023) (three-day denial of phone privileges and "occasionally being denied yard access" was insufficient to establish adverse action); *Coit v. Grohowski*, 2021 WL 4033116, at *6 (M.D. Pa. Sept. 3, 2021) (confinement in cell for four days and a three-day delay in phase advancement did not amount to adverse action); *Sears v. Mooney*, 2019 WL 6726839, at *8 (M.D. Pa. Dec. 11, 2019) (denial of one food tray and inability to shower and use the exercise yard for a week did not rise to the level of adverse actions); *Walker v. Mathis*, 665 Fed. Appx. 140, 143 (3d Cir. 2016) (two-day suspension from employment and accompanying loss of wages did not rise to the level of adverse action). Heider's refusal to permit Butler to shower, use the phone, or go to work for a handful of days is insufficient, on its own, to meet the constitutional standard for an adverse action. Summary judgment is warranted.

As to Pierson, the Court again notes the challenge in demonstrating a causal connection between protected activity directed at one individual – here, Heider – and alleged retaliation by another. *Williams*, 2023 WL 4628378, at *9 ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others.") (quoting *Evans*, 2009 WL 5064490, at *22); *Royster*, 308 Fed. Appx. at 579. Butler's unsupported averment that Pierson was "continue[ing] Defendant Heider's retaliatory animus" is insufficient to close this gap. *See* ECF No. 76 ¶ 12. Moreover, while a retaliatory cell transfer may suffice to establish an adverse action, it appears that the transfer was ordered by an individual named Suesser rather than Pierson.[6]

   c. Conditions of confinement

Although Butler's Complaint invokes the Eighth Amendment, he focused his factual averments and legal arguments entirely on his retaliation claim. In moving for summary judgment, Defendants construed Butler's Complaint as alleging that the temporary denial of showers, phone, kiosk, and work privileges, as well as his brief confinement in the RHU, amounted to cruel and unusual conditions of confinement. *See* ECF No. 60 at pp. 9-10. Butler did not respond to that portion of Defendants' motion, passing up the opportunity to clarify the nature of his Eighth Amendment claim or point to evidence in the record to support it. Given this omission, it appears likely that Butler never intended to assert an Eighth Amendment claim or has elected to abandon that theory of liability. *See, e.g., Tambasco v. United States Dept. of Army*, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of a dispositive

---

[6] Butler makes much of a misunderstanding stemming from an initial identification of that person as "Sever" rather than "Suesser." *See* ECF No. 62-1 ¶¶ 2, 5-6. Either way, there is nothing in the record to dispute that Pierson was carrying out an order from another individual when he ordered Butler to move cells.

11

motion); *Berckeley Inv. Group, Ltd. V. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (noting that summary judgment "is essentially 'put up or shut up' tie for the non-moving party").

In any event, the Court has independently reviewed the record and failed to locate any evidence that Defendants subjected Butler to unlawful conditions of confinement. The relevant Eighth Amendment inquiry is whether the alleged deprivation was "sufficiently serious" to deprive the inmate of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Courts have consistently held that temporary denials of shower and phone privileges do not run afoul of this standard. *Barndt v. Wenerowicz*, 698 Fed. Appx. 673, 677 (3d Cir. 2017) ("[T]he District Court correctly determined that the denial of showers for [twenty-eight days] does not rise to the level of a constitutional violation."); *Fortune v. Hamberger*, 379 Fed. Appx. 116, 122 (3d Cir. 2010) (denial of shower and exercise for fifteen days was not sufficiently serious to violate the Eighth Amendment). The same is true of false misconduct charges and limited stays in restrictive custody. *Freeman v. Miller*, 615 Fed. Appx. 72, 77 (3d Cir. 2015) (placement in restricted housing for seven days without "a desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper" did not violate the Eighth Amendment); *Booth v. Pence*, 354 F. Supp. 2d 553, 558–59 (E.D. Pa. 2005) ("[F]alse misconduct charges are not 'sufficiently serious' that they result 'in the denial of the minimal civilized measure of life's necessities.'") (quoting *Farmer*, 511 U.S. at 832). In short, none of the conditions imposed upon Butler violated his constitutional right to be free of cruel and unusual punishment and, accordingly, Defendants are entitled to summary judgment.

III.   Conclusion

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 59] be granted. Judgement should be entered in favor of Defendants and against Plaintiff as to all claims.

IV.   Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 20th day of August, 2024.

SUBMITTED BY:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE